[Civ. No. 6889. First Appellate District, Division One.—March 27, 1930.]

ELLEN HENNESSEY et al., Respondents, v. THOMAS ROBINETT et al., Appellants.

A. M. More and E. B. Mering for Appellants.

Fabius T. Finch and Paul F. Fratessa for Respondents.

THE COURT.—This is an action in ejectment wherein judgment was given for plaintiffs and defendants appeal. A previous trial of the action resulted in a judgment in favor of defendants, but on appeal the judgment was reversed (*Hennessey* v. *Robinett,* 198 Cal. 645 [246 Pac. 1043]).

The essential facts established at each trial, as they are set forth in the opinion rendered on the former appeal and as disclosed by the record on the present appeal, are substantially the same, and, briefly stated, are as follows: For a number of years immediately preceding and at the time of the commencement of the action plaintiffs and defendants owned adjoining lots fronting on the westerly side of Eighth Avenue between Moraga and Noriega Streets in San Francisco. Plaintiffs' lot had a frontage of 25 feet and defendants' lot, which adjoined plaintiffs' on the south, had a frontage of 50 feet; and both lots were 120 feet deep. During the year 1900, which was more than twenty years before the action was instituted, defendants inclosed their lot with a fence. The northerly line thereof was built along what they believed was the true boundary between the two lots, but it appears that the front portion of the fence was set on their own property 6 to 8 inches south of the division line, and the rear portion was built on plaintiffs' property approximately $1\frac{1}{4}$ inches north of the division line. Eventually the fence fell into a dilapidated condition and in 1919 plaintiffs proposed to defendants that they replace it with a new one at their joint expense. Defendants refused to enter into such an arrangement, and thereupon plaintiffs proceeded to replace the front 60 feet thereof at their own expense. Before doing so, however, and while the old fence was being removed, defendants came upon the ground and after considerable argument pointed out what they stated was the true division line between the lots, and which had been theretofore established by a survey and was at that time marked by a cut in the curb. After the true boundary had been thus designated and agreed upon, plaintiffs stated to defendants that they would set that portion of the fence they were about to rebuild 2 inches to the north of the division line, so that it would stand entirely on their own property. Defendants told them "to go ahead," that they were entirely satisfied; and the fence was constructed accordingly. A year or two thereafter defendants built an addition to their house along said division line. It was under construction for several months and was completed during August, 1921. About November, 1922, plaintiffs, having made arrangements to remodel their house nearest said line, were informed by the contractor that there was a shortage in the width of their

lot. Thereupon they employed an engineer to check the measurements and it was definitely ascertained that defendants had built the addition to their house flush with the new fence line, thereby overlapping a strip of plaintiffs' property for a width of between 1½ and 1⅝ inches. Plaintiffs then brought this action in ejectment.

As will be observed from the decision rendered on the former appeal, at the first trial, which took place before a different judge, defendants' answers merely denied the allegations of the complaint relating to plaintiffs' title to the lot therein described, and that defendants were encroaching upon the same; and although the trial court found that plaintiffs were the owners of the land described in the complaint, it further found " . . . that defendants (had) maintained a fence between the northerly boundary of defendants' land and the southerly boundary of plaintiffs' land for more than twenty years last past; and that, at all times in the complaint mentioned, plaintiffs and their predecessors in interest acquiesced in the boundary line marked by said fence, as said boundary line had been established for more than twenty years last past; that during the month of September, 1921, defendants erected a dwelling house upon the parcel of land so owned by them and that at all times during the construction of said dwelling house plaintiffs saw said dwelling house being constructed, made no objection thereto, but, on the contrary, consented to the erection of said dwelling house, and had a complete knowledge thereof; that said dwelling house is upon the land marked by said fence as hereinbefore set forth for a period of more than twenty years last past and is upon the land owned and occupied by the defendants.'' It was in pursuance of the foregoing findings that judgment at the first trial was entered in favor of defendants.

On appeal the Supreme Court reversed the judgment upon the grounds that the findings above quoted were neither supported by the evidence nor responsive to any issue raised by the pleadings or the evidence. In this regard the court said: ''It appears, from the evidence, beyond question that the defendants are encroaching upon the plaintiffs' land to the extent of said overlap. The finding above quoted is not responsive to any issue raised by the pleadings. All question as to the location of the old fence on an agreed

boundary line was eliminated, at least so far as the front 60 feet of said fence was concerned, by the construction of the new fence. The fact that the old fence encroached on the defendants' property and established an agreed boundary line by long acquiescence might have been available to the plaintiffs as a basis for the contention that the old fence line was the division line, but they are not so contending. The removal of the old fence and the construction of the new fence entirely on the plaintiffs' land removed all controversy as to the old fence line. No issue as to the estoppel of the plaintiffs by reason of consent to the construction of the defendants' building at its present location or by failure to object thereto was raised by the pleadings nor does it appear that such an issue was raised by the evidence. There was also no evidence that the defendants' building conforms to the line marked by the old fence."

Before the action came on for trial a second time defendants amended their answers so as to plead as a defense the facts set forth in the above-quoted finding; but on the second trial the court made a negative finding as to the facts alleged in said defense and accordingly entered judgment in favor of plaintiffs. It would seem, therefore, that since it was adjudicated on the former appeal, upon substantially the same facts, that defendants are, beyond question, encroaching upon plaintiffs' land to the extent of said overlap, the main question to be considered and determined on the present appeal is whether the evidence adduced at the second trial is legally sufficient to sustain said negative finding upon the issue of estoppel; and we are of the opinion that it is, for in this regard the record discloses testimony to show that although plaintiffs knew defendants were building an addition to their house near said boundary line, they were not aware that defendants were overlapping the division line previously established and agreed upon until more than a year after the completion of the structure, namely, about December, 1922, when they caused a survey of their lot to be made in response to the assertion of their contractor that there was a shortage in the width of their lot; and within a month thereafter this action in ejectment was instituted.

As stated, the true boundary line was evidenced by a cut in the curb, and was pointed out on the ground and agreed to by defendants; but in addition thereto the correct-

ness of said line was clearly confirmed by four separate surveys made at different times by different engineers. Three of the surveys were received at plaintiffs' request and the fourth at the request of defendants. Defendants now challenge the accuracy of all these surveys, but after an examination of the evidence we are convinced that defendants' grounds of attack thereon are not well founded. With reference thereto the evidence shows that the surveys were made by competent engineers, one of whom was the assistant city engineer, and he testified that the city engineer's office had made a thorough study of the property lines within that block and that the division line between plaintiffs' and defendants' lots as shown by his survey had been definitely fixed by running lines from old established monuments and taking actual measurements on the ground, and that his survey had been checked and rechecked with the official records in the city engineer's office and with the surveys previously made. Moreover, all of said surveys show beyond doubt that defendants' building overlaps plaintiffs' lot to the extent above mentioned.

The answers alleged also and defendants contend that they have been in the actual and adverse possession of the disputed strip of land for more than twenty years; but it is evident from the facts above stated, as well as from the determination on the former appeal, that there is no merit whatever in this contention, because the evidence shows without conflict that defendants never were in possession of the disputed strip of land until they commenced the construction of the addition to their house in 1921, and this action was instituted in January, 1923.

Evidence was also introduced on behalf of defendants to show that in 1909 plaintiffs obtained a decree of title to their lot in conformity with the terms of the McEnerney Act (Stats. 1906 (Ex. Sess.), p. 78), and that in 1918 defendants obtained a similar decree of title to their lot. It is manifest, however, that neither of those decrees can serve to support defendants' claim to the strip of land in dispute because, as will be noted, both decrees were obtained while the old fence was still standing and therefore said decrees could establish in the respective parties title only to such areas of land as were then inclosed and actually occupied by them; and admittedly the strip of land now in dispute, as well

as an additional 6 or 8 inches lying between the old fence line and the true boundary, were, at the time the decrees were obtained, inclosed as part of plaintiffs' and not as part of defendants' property.

██ Besides adjudging that plaintiffs are the owners of the land described in the complaint and that defendants are encroaching thereon to the extent of said overlap, the judgment directs that defendants forthwith surrender possession thereof, "and that a writ of execution issue . . . commanding the sheriff . . . to place and maintain plaintiffs in the exclusive possession" thereof; and defendants contend that the foregoing terms of the judgment are unenforceable, because plaintiffs, in remodeling their house, constructed the southerly wall thereof within 2 inches of the northerly wall of defendants' house, thereby making it impossible, as defendants claim, for them to remove their structure from the overlap above mentioned. And it is further urged that in any event the encroachment is so slight that it does not warrant the equitable relief granted.

The question of the feasibility of the removal of defendants' structure from the overlapping strip was not made an issue by the pleadings, nor was any evidence introduced upon that subject; and in opposition to defendants' contention plaintiffs assert that such removal is clearly practicable. We are of the opinion that in the absence of such issue and evidence the question of the enforceability of the judgment is not a matter which can be properly considered or determined on this appeal. ██ And in answer to the remaining point urged, it may be stated that evidence was introduced to show that the loss to plaintiffs of the strip of land in question will not only substantially diminish the value of their lot but will seriously affect its salability.

After a review of the entire record and full consideration of the points defendants urge in support of their appeal, we are unable to find any reasonable ground for reversal. The judgment is therefore affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 26, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 26, 1930.